Justice Laurie McKinnon, dissenting.
*269 ¶67 I dissent from the Court's decision because Plaintiffs, Individual Electors and Montana Democratic Party, did not plead a cognizable private claim for relief. There exists neither an express nor an implied private right of action to challenge the county election administrator's ***211 verification of signatures on minor political party primary election qualification petitions (Primary Election Petitions). Further, the Court's decision disenfranchises over 1,500 qualified electors who voted for Green Party candidates in the June 5, 2018 primary election. See Montana Secretary of State, 2018 Statewide Primary Election Canvass , https://perma.cc/ABP8-4BW7. I would have found the District Court in error and reversed its decision that removed the Green Party from the election ballot.
¶68 The major political parties in Montana automatically qualify to hold a primary election. Section 13-10-601(1), MCA. If a minor political party-such as the Green Party-wishes to hold a primary election, it must follow a specific statutory procedure that consists of gathering registered voter signatures on Primary Election Petitions. Section 13-10-601(2), MCA. Similarly, signatures may be gathered in support of various ballot issues, such as initiatives, referendums, or constitutional amendments. See § 13-1-101(6)(a), MCA ; §§ 13-27-101, -301, MCA. While both processes require signature gathering, primary elections are governed by Title 13, chapter 10, MCA (Chapter 10), whereas ballot issues are governed by Title 13, chapter 27, MCA (Chapter 27). That distinction is crucial here because Chapter 27 grants a qualified elector the right to challenge ballot issue signatures while Chapter 10 does not contain a similar private right of action.
¶69 Preliminary, it is important to distinguish between a ballot issue and a minor political party's request to hold a primary election. A ballot issue is "a proposal submitted to the people at an election for their approval or rejection, including but not limited to an initiative, referendum, proposed constitutional amendment, recall question, school levy question, bond issue question, or ballot question." Section 13-1-101(6)(a), MCA. A minor political party's request to hold a primary election is not an "issue" or a "proposal submitted to the people at an election for their approval or rejection"-it is a minor political party's request to present its candidates as a choice to the electorate in the primary election. Thus, it is not a "ballot issue" subject to the general provisions of Chapter 27.
¶70 Chapter 10 does, however, implicate specific statutes in Chapter 27 regarding the signature verification process. Section 13-10-601(2)(b), MCA, requires a minor political party to collect a certain number of registered voter signatures on Primary Election Petitions. Once complete, the minor political party must submit the Primary Election Petitions to the county election administrator. Section 13-10-601(2)(c), MCA. The county election administrator then verifies the Primary Election Petitions and accompanying affidavits of circulation pursuant ***212 to the procedure outlined in Chapter 27, §§ 13-27-303 to -306, MCA. Section 13-10-601(2)(c), MCA.
¶71 Section 13-27-303, MCA, sets forth an extensive signature verification process. When an election administrator receives the Primary Election Petitions, he must check the names of all signers to verify that they are registered electors of the county. Section 13-27-303(1), MCA. Furthermore, he must randomly select signatures from each sheet or section and compare them with the signatures of the electors as they appear in the registration records. Section 13-27-303(1), MCA. If the randomly selected signatures appear genuine, the election administrator may certify all signatures on the sheet or section to the secretary of state. Section 13-27-303(1), MCA. However, if any of the randomly selected signatures do not appear genuine, the election administrator must compare all signatures on the sheet or section. Section 13-27-303(1), MCA. If the election administrator discovers fraudulent or duplicate signatures, he may submit the name of the elector or the signature gatherer, or both, to the county attorney for investigation. Section 13-27-303(3), MCA. Once the election administrator verifies the signatures, he forwards *270 the petitions to the secretary of state. Section 13-27-304, MCA.
¶72 While county election administrators verify signatures on Primary Election Petitions in the same manner as they verify signatures on ballot issue petitions, § 13-10-601(2), MCA, only expressly references five Chapter 27 statutes: §§ 13-27-302 to -306, MCA. Section 13-10-601(2), MCA, expressly references § 13-27-306, MCA, which provides a registered elector with the right to request the county election administrator compare signatures he did not previously compare. If any of those signatures are not genuine, the election administrator must compare all of the signatures on that sheet or section. Section 13-27-306, MCA. Section 13-27-306, MCA, does not, however, provide an elector with the ability to challenge signatures the election administrator already compared and approved. And that makes practical sense-time is of the essence before primary elections, and at some point ballot access must be cut off to ensure the state has enough time to prepare the primary election ballots. This statutorily-specified administrative review process provides ballot access to minor political parties while still enabling the state to regulate elections to the extent necessary to effectuate timely primary elections.
¶73 As far as ballot issues are concerned, § 13-27-317(1), MCA, provides a qualified elector with the right to "file an action in the district court ... contesting the certification of a ballot issue for illegal ***213 petition signatures or an erroneous or fraudulent count or canvass of petition signatures." If the district court "finds that illegal petition signatures or an erroneous or fraudulent count or canvass of petition signatures affected the outcome of the petition process and certification, the secretary of state shall decertify the contested ballot issue." Section 13-27-317(2), MCA. Section 13-27-317(1), MCA, provides a qualified elector -not just anyone and certainly not a major political party such as the Montana Democratic Party-with the opportunity to challenge the signatures and petitions in support of a ballot issue in district court. Chapter 10 does not similarly provide a qualified elector with the right to challenge Primary Election Petitions, nor does it expressly incorporate § 13-27-317, MCA. See §§ 13-10-601 to -604, MCA.
¶74 The fact that the Legislature provided qualified electors with the right to challenge ballot issue signatures and petitions, § 13-27-317, MCA, but not Primary Election Petition signatures and petitions, highlights the fact that it could have, but chose not to. A registered elector may request that the county election administrator examine Primary Election Petition signatures not previously reviewed, § 13-10-601(2)(c), MCA (expressly incorporating § 13-27-306, MCA ), but the Legislature did not expressly provide any other challenge to Primary Election Petition signatures.
¶75 Because there is no express private right of action to support Plaintiffs' claim, I next ask whether there is an implied private right of action. In determining whether a statutory scheme implies a private right of action, this Court frequently asks four questions: (1) Is the interpretation consistent with the statute as a whole?; (2) Does the interpretation reflect the intent of the Legislature considering the plain language of the statute?; (3) Is the interpretation reasonable so as to avoid absurd results?; and (4) Has the agency charged with the administration of the statute placed a construction on the statute? See, e.g. , Ibsen, ¶¶ 47-49 ; Wombold , ¶ 35.
¶76 Applying the four factors to this case leads me to the conclusion that Chapter 10 does not imply a private right of action. First, interpreting § 13-10-601(2), MCA, as implying a private right of action is inconsistent with the statute as a whole. Section 13-10-601(2), MCA, expressly incorporates § 13-27-303, MCA, which provides that the county election administrator may submit the names of suspected wrongdoers to the county attorney for investigation. The county attorney may then pursue any violations under the state's election laws. See § 13-27-303(3), MCA (citing § 13-27-106, MCA (unsworn falsification or tampering with public records or information);
***214 § 13-35-207, MCA (deceptive election practices) ). Because the statutes provide the county attorney with the exclusive right to investigate and pursue suspected wrongdoing, an implied private cause of *271 action is inconsistent with the statutory scheme as a whole. See Ibsen , ¶ 47.
¶77 Second, considering the statute's plain language, interpreting § 13-10-601(2), MCA, to imply a private cause of action does not reflect the Legislature's intent. As discussed above, § 13-10-601(2), MCA, only references five select statutes in Chapter 27, and Primary Election Petitions are not "ballot issues" subject to Chapter 27 generally. The Legislature clearly intended to limit the extent Chapter 10 incorporated Chapter 27.
¶78 Third, Plaintiffs' contention and the Court's conclusion that the county election administrators' verification of signatures on Primary Election Petitions may be challenged in district court is unreasonable because it effectuates absurd results. The statutes must be closely followed considering the short time period-85 days-between when the county election administrators must certify Primary Election Petitions to the secretary of state and the date of the primary election. See § 13-10-601(2)(d), MCA. At some point, the State must print primary election ballots and electors must be able to rely upon the legitimacy of the options presented to them on the ballot. The District Court's entertainment of Plaintiffs' claims and subsequent post-election invalidation of the Green Party's Primary Election Petitions is unreasonable and leads to an absurd result considering it nullified, post-election, over 1,500 qualified electors' votes.
¶79 Fourth, § 13-10-601(2), MCA, and the five Chapter 27 statutes to which it references, §§ 13-27-302 to -306, MCA, vest county election administrators with full discretion to review, compare, and verify Primary Election Petition signatures. The record in this case demonstrates that county election administrators take this task seriously and diligently compare signatures, invalidating them when necessary. For example, Cascade County election administrators rejected 580 of 1,783 submitted signatures; Lewis & Clark County election administrators rejected 428 of 1,526 submitted signatures; and Yellowstone County election administrators rejected 751 of 2,798 submitted signatures.
¶80 Review of the four factors leads me to the conclusion that no implied private right of action exists for a qualified elector, or any other entity, to challenge the county election administrator's verification of Primary Election Petition signatures. The Court's holding otherwise is inconsistent with Montana's statutory scheme, and it is especially concerning because it disenfranchises over 1,500 ***215 qualified electors who voted for Green Party candidates in the June 5, 2018 primary election.
¶81 Qualified electors possess a "constitutional right to vote and to have their votes counted." Wesberry v. Sanders , 376 U.S. 1, 17, 84 S.Ct. 526, 535, 11 L.Ed.2d 481 (1964). "No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined." Wesberry , 376 U.S. at 17, 84 S.Ct. at 535. While voters' rights are imperative, states also possess important interests in regulating their elections and may act to preserve the fairness and integrity of the electoral process. Munro v. Socialist Workers Party , 479 U.S. 189, 193, 107 S.Ct. 533, 536, 93 L.Ed.2d 499 (1986) ; see also Jenness v. Fortson , 403 U.S. 431, 442, 91 S.Ct. 1970, 1976, 29 L.Ed.2d 554 (1971). Therefore, a state may regulate ballot access to some extent, such as requiring "candidates to make a preliminary showing of substantial support in order to qualify for a place on the ballot." Munro , 479 U.S. at 194, 107 S.Ct. at 537 (quoting Anderson v. Celebrezze , 460 U.S. 780, 788 n.9, 103 S.Ct. 1564, 1570 n.9, 75 L.Ed.2d 547 (1983) ).
¶82 Conforming with those fundamental principles, Montana's ballot access statutes condition ballot access in both primary and general elections "on a showing of a modicum of voter support." See Munro , 479 U.S. at 196, 107 S.Ct. 533 ; §§ 13-10-601 to -604, MCA ; §§ 13-27-101 to -504, MCA. The Green Party's supporters complied with § 13-10-601(2), MCA, and demonstrated a "modicum of voter support" backing up its request to have a ballot in the primary election. The District Court erred by invalidating the petitions and election results-there exists no way for a qualified elector or other entity to challenge the county election administrators' signature verification of the Green Party's *272 Primary Election Petitions through a declaratory action in the courts. The Legislature, by not including § 13-27-317, MCA, as a method of challenging Primary Election Petition signatures, limited a qualified elector's challenge to requesting the county election administrator compare previously un-compared signatures. See § 13-10-601(2)(c), MCA (expressly incorporating § 13-27-306, MCA ). If the county election administrator discovers fraudulent or duplicate signatures, he may, in turn, submit the name of the elector, the signature gatherer, or both, to the county attorney for investigation. See § 13-10-601(2)(c), MCA (expressly incorporating § 13-27-303(3), MCA ).
¶83 Montana's Uniform Declaratory Judgments Act gives a party whose rights are affected by a statute the right to seek a court's determination of any question of the statute's construction or validity ***216 and obtain a declaration of rights thereunder. Section 27-8-202, MCA. Plaintiffs filed an action for declaratory judgment and injunctive relief asking the District Court to review the county election administrators' verification of certain signatures on the Green Party's Primary Election Petitions and declare the petitions invalid. Based on my conclusion that Chapter 10 confers neither an express nor implied private right of action in the courts, which is dispositive in this case, I would conclude the District Court should have denied Plaintiffs' request for declaratory judgment and injunctive relief.
¶84 The Court views § 13-35-108, MCA, which provides that a district court may order an injunction "[i]n any action brought under the election laws of this state," as "a broadly applicable remedy expressly provided by the Legislature for enforcement of the provisions of Title 13, MCA." Opinion, ¶ 32. The Court overstates the statute's applicability, however, because there must first be an "action brought under the election laws of this state" before § 13-35-108, MCA, applies and provides a district court with injunctive power. Because Plaintiffs have not pled a cognizable right of action under Montana's election laws, § 13-35-108, MCA, is inapplicable.
¶85 The Legislature provided clear instruction regarding permissible challenges to Primary Election Petition signatures. See § 13-10-601(2), MCA (expressly incorporating §§ 13-27-302 to -306, MCA ). The Legislature's review process is reasonable given that the responsibility of ensuring the authenticity of a particular signature is best left with the county election administrator in possession of the electors' signature cards; the election administrator may request a county attorney investigate suspected fraudulent signatures; and the review process must be practical given the expedited time requirements for securing ballot access in primary elections. The review process necessarily focuses on the signatures' authenticity, which is at the heart of the issue, and not the signature gathering process itself. Most importantly, however, the review provided by the Legislature in Chapter 10 protects against a post-election disenfranchisement of qualified electors' constitutional right to vote. In contrast to the extensive and exhaustive review process that the Court allows, the Legislature's localized review ensures the signatures are authentic and also protects against a post-election disenfranchisement of the constitutional right to vote. The Court's decision unnecessarily and unconstitutionally denies over 1,500 qualified electors their right to vote and supplants a statutory scheme that protects against disenfranchisement while preserving the fairness and integrity of the electoral process.
***217 ¶86 The Court overreaches by permitting judicial review of county election administrators' verification of Primary Election Petition signatures when the Legislature has specifically provided for a method of review that does not include judicial oversight. It is of utmost importance, particularly when it comes to contests such as the one at issue here, that this Court carefully follow the relevant statutes to avoid judicial overreach into matters the Legislature deemed best suited for an administrative review process. Significantly, the parties did not challenge the minor political party qualification statutes or the method of review provided therein. Those statutes do not allow a challenge to the process of gathering signatures on Primary Election Petitions, but rather are designed *273 to ensure signatures' authenticity by instructing county election administrators to compare signatures with filed registration cards. The District Court's decision declaring the Green Party's Primary Election Petitions invalid and removing the Green Party from the ballot should have been reversed.